WALTER V. WILSON, Respondent, *v.* THE CITY OF TROY, Appellant.

Interest may legally be allowed by a jury, in its discretion, in estimating the amount of damages sustained by the plaintiff through an injury to his property caused by the negligence of the defendant. The interest may be computed on the amount of the depreciation in value of the property.

The distinction in this respect between actions sounding in tort, and actions to recover unliquidated damages on contract pointed out.

An excavation was made in a street of the city of Troy for the purpose of laying pipe to conduct water from the main laid in the street to a private residence. The owner thereof employed a firm of plumbers to do the work of conducting the water to his house. The city water

works are the property of the municipality, and under the management and control of a board of water commissioners, who appoint a superintendent of the water works. Said firm applied to that officer for men to dig the trench; he directed men in the employ of the city to do this, they were paid by the city, the firm refunding to the city the amount so paid. The excavation was left without proper guards and lights, and a horse belonging to L., plaintiff's assignor, while being driven along the street at night fell into the opening and was injured. In an action to recover damages it appeared that said board, pursuant to the power conferred upon them by statute (§ 6, chap. 58, Laws of 1855), enacted an ordinance or by-law, prohibiting any one, except the superintendent or person employed by him or the board, from tapping or making any connection with the mains, unless by the permission or under the direction of the superintendent; also that it had been the custom for years before the accident to make application to the superintendent for men to make excavations necessary in connecting with the mains, and that they were furnished as in this case. *Held,* that the by-law did not simply prohibit the connection of lateral pipes with the main by private persons, but also prohibited them from digging the necessary trenches in the streets; and that while, as between the owner of the dwelling and the plumbers, the digging was a part of the work of the latter, as to others it could not be held as matter of law that the men who dug the trench and left it unguarded ceased, for the time being, to be servants of the city, and became the servants of the plumbers; but that the question was one of fact and was properly submitted to the jury; and this having been found against the city that it was properly held liable, although it was not charged with notice, actual or implied, of the negligent act.

Where one is injured by the neglect of a city to properly guard a place in its street, made dangerous by its own act, it is not essential to show notice to it of the defect.

Reported below, 60 Hun, 183.

(Argued May 25, 1892; decided October 4, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 10, 1891, which modified and affirmed as modified a judgment in favor of plaintiff, entered upon a verdict.

This was an action by plaintiff as assignee to recover damages for injuries to a horse belonging to one Learned, received by falling into a trench in South street, in the city of Troy, on the night of November 19, 1879, which it was charged was

dug by defendant's employes, and permitted to remain unguarded.

The facts, so far as material, are stated in the opinion.

*William J. Roche* for appellant. The charge of the court in effect, that this work was being done under the direction of the city by its officers, and that no other notice of the condition of this street was required to hold the city liable for defects therein arising through the doing of the work, was not correct. (Laws of 1832, chap. 51, § 6; Laws of 1855, chap. 58; Laws of 1880, chap. 30, § 6.) The court erred in instructing the jury that in awarding damages the outside limit was the sum of $3,000, "and the interest on that sum from the time of the happening of the injury." (*Fitch* v. *Livingston,* 4 Sandf. 492; *Walrath* v. *Redfield,* 18 N. Y. 457; *Mygatt* v. *Wilson,* 45 id. 306; *McCollum* v. *Seward,* 62 id. 316; *Mercer* v. *Vose,* 67 id. 56; *Black* v. *C., etc., Co.,* 45 Barb. 245; *Winch* v. *M. B. I. Co.,* 86 N. Y. 618; *McMaster* v. *State,* 108 id. 542; *Reiss* v. *N. Y. S. Co.,* 35 N. Y. S. R. 86; *Parrott* v. *K. I. Co.,* 46 N. Y. 361; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 114 id. 331; *Sayre* v. *State,* 123 id. 291.)

*Charles E. Patterson* for respondent. The liability of the defendant for the injury in question was clearly and fully established. (*Pettingill* v. *City of Yonkers,* 116 N. Y. 558; *Ehrgott* v. *Mayor, etc.,* 96 id. 265; *Walsh* v. *Mayor, etc.,* 107 id. 220; *Barnes* v. *District of Columbia,* 91 U. S. 540; *Brusso* v. *City of Buffalo,* 90 N. Y. 679; *Turner* v. *City of Newburgh,* 109 id. 301; *Nelson* v. *Vil. of Canisteo,* 100 id. 89; *Russell* v. *Vil. of Canastota,* 98 id. 496.) Error was not committed in including interest in the amount of the verdict given by the jury. (*Walrath* v. *Redfield,* 18 N. Y. 457–462; *H. Ins. Co.* v. *P. R. R. Co.,* 11 Hun, 182–188; *Mairs* v. *M. R. E. Assn.,* 89 N. Y. 498; *Duryea* v. *Mayor, etc.,* 96 id. 477–499; *Moore* v. *N. Y. E. R. Co.,* 126 id. 671.) Inasmuch as the amount of the verdict as modified by the

General Term is less than the uncontradicted evidence shows the plaintiff was entitled to recover, if entitled to recover at all, the judgment should not be set aside because of any errors in the method adopted by the jury to arrive at the result actually reached. (*Minick* v. *City of Troy*, 83 N. Y. 514 · *Field* v. *Field*, 77 id. 294.)

O'BRIEN, J. The record in this case presents two questions. First, whether the finding of the jury that the damage was the result of the defendant's negligence is sustained by any evidence, and secondly, whether interest could legally be allowed by the jury in estimating the amount of the damages. On the night of the 13th of November, 1879, a valuable horse belonging to one Learned, plaintiff's assignor, while being driven through South street, in the city of Troy, fell into an open ditch or unguarded excavation, made during that day, and was permanently injured. There is little, if any controversy, with respect to the value of the horse, the extent of the injury or the amount of damages. The night was dark and it is not denied that there was evidence for the jury sufficient to sustain a finding of negligence on the part of someone by reason of the failure to protect a place of danger, in a public street, by proper guards and lights. It was not shown that the city had any actual notice of the existence of the excavation, if made by private parties without its permission, and a sufficient period had not elapsed between the time of opening it and the accident, to render the city liable on the ground of implied notice. The excavation was made for the purpose of conducting the water from the principal main in the street, through lateral pipes, into a private house. The owner of the house employed a firm of plumbers to do the work, which included the digging of the trench, as well as laying and connecting the lateral pipes with the main in the street. The firm applied to the superintendent of the water works for men to open the trench in the street, and that officer directed laborers in the employ of the city to do so. The opening in the street was made by them and they were paid for the work

by the city, the plumbers refunding to it the sum so paid. The question is whether the men who dug the ditch were under the control and direction of the defendant, or subject to the orders of the plumbers engaged in performing a piece of work for the owner of the house. The system of water works in Troy is the property of the municipality and is under the management and control of a board of water commissioners, which may be regarded as a department of the city government. The commissioners are by law required to nominate, and the common council of the city to appoint a superintendent of the water works, who is the executive officer in that department, and who, in this case, directed the men in the employ and pay of the city to make the excavation in the street. The board is authorized by law to extend the distributing pipes of the water works wherever they might think proper, and to make such alterations and improvements in the works, and in the management and preservation thereof, as they might deem necessary and expedient, and to employ such persons and assistants as they might require to execute any of these purposes, which employes were to be paid for their services from the city treasury. The commissioners were also empowered to enact such by-laws, regulations and ordinances as they should deem necessary for the protection of hydrants and water pipes, and the preservation, protection and management of the water works. These by-laws, unless disapproved by a vote of two-thirds of all the members of the common council of the city, were to have all the force and effect of law.

In pursuance of the power thus conferred by the statute, the board of water commissioners enacted by-laws and ordinances on the subject, which were in force at the time the excavation in question was made. They, in effect, prohibited any person, except the superintendent and those employed by him or by the commissioners, to tap or make any connection with the main or distributing pipe, or to permit the same to be done, unless by the permission and under the direction of the superintendent.

The learned counsel for the defendant contends that this

regulation simply forbids the act of connecting the lateral pipes, from the house, with the main, and did not prohibit private persons from digging the necessary trenches and uncovering the main or distributing pipe, and hence that part of the work was done by the contractors, who were employed by the owner of the house to make the connection, and not by the city. But a private individual had no right to dig in the street for this or any other purpose without the permission of the proper municipal authorities; and the object, as well as the language of the ordinance, indicates that it was intended to prevent the uncovering of the main or any interference with the street, in which it was placed, by private parties. At all events, the water board and its chief executive officer, the superintendent, in the discharge of the duties imposed upon them by the statute, might very properly give to it that construction and act accordingly. To hold that such a by-law did not embrace within its object and purview the evils that might result from unguarded and unregulated interference with the bed of the street, by private parties, in order to reach the main, would be giving to it a construction altogether too narrow. The evidence tends to show that the water board gave to it the broader and more comprehensive meaning, as it was the custom and practice for years before the accident in question to make application to the superintendent for men to do the digging, and they were always furnished, as in this case. As between the owner of the house and the plumbers, employed by her to introduce the water into her house, the digging was undoubtedly a part of the contract or work of the latter. If no main had been placed in the street at that time, they could also have contracted with her to procure its extension, but that part of the work would be subject to the action and regulations of the water board, and while the contractors might be obliged to pay the city for the whole or some part of the expense, it would be none the less the work of the city. One of the plumbers testified that while he agreed with the owner of the house to do all the work, yet he knew then that it was the practice and custom to

apply to the superintendent of the water works for men to do
the digging and to make the connection, and acted upon the
assumption that he had no right to do it. He also says that
the men who made the excavation were not employed by him
but by the city. We think that upon the proof it could not
be held as matter of law that the men who dug the trench
and left it unguarded ceased for the time being to be the serv-
ants of the city and subject to the directions of the superin-
tendent, and became, while doing this job of work, the
servants of the party employed to put in the lateral
pipes into the house, as is urged by the learned counsel for
the defendant. What party sustained the relation of master
to the men who dug the trench, and had the control and direc-
tion of them, and was charged with the duty of directing them
to properly guard the ditch, whether the plumbers, on the one
hand, or the city, through the superintendent of the water
works on the other, was the important question to be deter-
mined, and the trial court submitted it to the jury. Under
all the circumstances, the question became one of fact, and
this disposition of it was not error. (*Ward* v. *New England
Fibre Co.,* 154 Mass. 420.)

The finding of the jury is conclusive upon us and imports
that the city itself, through one of its officers or departments,
caused the trench to be dug and left it unguarded, resulting
in the damage complained of. In such a case the negligent
act is imputable to the city and the doctrine of actual or
implied notice has no application, or at least is unnecessary,
where one injured by the neglect of the city to properly guard
a place made dangerous by its own act, brings the action.
(*Pettengill* v. *City of Yonkers,* 116 N. Y. 558; *Walsh* v.
*Mayor, etc.,* 107 id. 220; *Turner* v. *City of Newburgh,* 109
id. 301; *Brusso* v. *City of Buffalo,* 90 id. 679; *Russell* v.
*Village of Canastota,* 98 id. 496; *Nelson* v. *Village of Can-
isteo,* 100 id. 89; *Ehrgott* v. *Mayor, etc.,* 96 id. 273; *Barnes*
v. *Dist. of Columbia,* 91 U. S. 540.)

The amount demanded in the complaint, on account of the
injury to the horse, was $3,000, and the court instructed the

jury that they could not, in awarding damages, go beyond that sum, with interest. The defendant's counsel excepted to this in so far as it authorized interest and requested the court to charge that the jury could not allow interest in the action. The court declined to so charge and the defendant's counsel excepted. The jury afterwards came into court and announced that they had found a verdict for the plaintiff for $3,000 and interest. The court then said : "You must compute the interest if you give interest : You will have to render your verdict in dollars and cents." This direction was complied with, and the verdict as entered included interest from the date of the injury which result has been modified by the General Term, by striking out the interest awarded prior to the date of the presentation of the claim to the city, which was held to be a prerequisite to the maintenance of the action. The fair construction of the charge is that the jury could include in the damages interest upon the sum found to represent the diminished value of the horse, in consequence of the injury, and not that the plaintiff was entitled to interest as matter of right. The exception, therefore, presents the question whether, in an action to recover damages to property by reason of negligence on the part of the defendant, it is within the power of the jury, in the exercise of discretion, to include in their award of damages interest on the sum found to represent the diminished value of the property, in consequence of the injury, from the time that the cause of action accrued. When interest may be allowed as part of the damages, in actions of this character, is a question which, in the present state of the law, is involved in much confusion and uncertainty, and in regard to which the decisions of the courts are not harmonious. It is, perhaps, impossible to formulate a general rule embracing every possible case. The tendency of courts in modern times has been to extend the right to recover interest on demand far beyond the limits within which that right was originally confined. What seemed to be the demands of justice did not permit the principle to remain stationary, and hence it has been for years in a state of

constant evolution. This, in some measure, accounts for many of the apparently contradictory views to be found in the adjudged cases. There are certain fundamental principles, however, established by the decisions in this state which, when properly applied, will aid in the solution of the question. There is, of course, a manifest distinction, always to be observed, between actions sounding in tort and actions upon contract. In the latter class of actions, there is not much difficulty in ascertaining the rule as to interest until we come to unliquidated demands. The rule in such cases has quite recently been examined in this court and principles stated that will furnish a guide in most cases. ( _White_ v. _Miller_, 78 N. Y. 393.) .

We are concerned now only with the rule applicable in actions of tort. The right to interest, as a part of the damages, in actions of trover and trespass _de bonis asportatis_ was given first in England by statute third and fourth William IV. The recovery was not, however, allowed by that statute as matter of right but in the discretion of the jury. The earlier cases in this state followed the rule thus established in England, and permitted the jury, in their discretion, to allow interest in such cases. (_Beals_ v. _Guernsey_, 8 John. 446; _Hyde_ v. _Stone_, 7 Wend. 354; _Bissell_ v. _Hopkins_, 4 Cow. 53; _Rowley_ v. _Gibbs_, 14 John. 385.)

The principle that the right to interest in such cases was in the discretion of the jury was, however, gradually abandoned and now the rule is that the plaintiff is entitled to interest on the value of property converted or lost to the owner by a trespass as matter of law. The reason given for the rule is that interest is as necessary a part of a complete indemnity to the owner of the property as the value itself, and in fixing the damages, is not any more in the discretion of the jury than the value. (_Andrews_ v. _Durant_, 18 N. Y. 496; _McCormick_ v. _Penn. C. R. R. Co._, 49 id. 315; _Buffalo & H. T. Co._ v. _Buffalo_, 58 id. 639; _Parrott_ v. _Knickerbocker & N. Y. Ice Co._, 46 id. 369.) It is difficult to perceive any sound distinction between a case where the defendant converts or

·carries away the plaintiff's horse and a case where, through negligence on his part, the horse is injured so as to be value-less. There is no reason apparent for a different rule of damages in the one case than in the other. In an early case in this state the principle was recognized that interest might be allowed, by way of damages, upon the sum lost by the plaintiff in consequence of defendant's negligence. (*Thomas* v. *Weed*, 14 John. 255.)

We think the rule is now settled in this state that where the value of property is diminished by an injury wrongfully inflicted the jury may, in their discretion, give interest on the amount by which the value is diminished from the time of the injury. That is the rule laid down in the elementary books and sustained by the adjudged cases. (Sedgwick on Damages [8th ed.], vol. 1, §§ 317, 320; *Walrath* v. *Redfield*, 18 N. Y. 457, 462; *Mairs* v. *Manhattan R. E. Assn.*, 89 id. 498; *Duryee* v. *Mayor, etc.*, 96 id. 477, 499; *Home Ins. Co.* v. *Penn. R. R. Co.*, 11 Hun, 182, 188; *Moore* v. *N. Y. E. R. R. Co.*, 126 N. Y. 671; *P. S. V. R. Co.* v. *Ziemer*, 124 Penn. St. 560.)

There is a class of actions sounding in tort in which interest is not allowable at all, such as assault and battery, slander, libel, seduction, false imprisonment, etc. There is another class in which the law gives interest on the loss as part of the damages, such as trover, trespass, replevin, etc. And still a third class in which interest cannot be recovered as of right, but may be allowed in the discretion of the jury, according to the circumstances of the case. This action belongs to the latter class, and, as we have construed the charge as a direc-tion that the jury might, in their discretion, allow interest on the diminished value of the horse, it was not erroneous.

Our attention has been called to the case of *Sayre* v. *State* (123 N. Y. 291), and it is urged, upon the authority of that case, that interest cannot be allowed in any case for the recovery of unliquidated damages arising from negligence. We think that the case, when correctly understood, does not sustain the contention, but in effect holds the contrary. In

that case a party appealed from the decision of the Board of Claims upon an award in his own favor, and the only question was whether, upon the evidence and findings, the claimant had been allowed all the damages that he was entitled to, and this court not only affirmed his right to all the damages that the board had awarded him, but increased the award from $3,000 to $8,136. The claim was based upon the negligent act of the state in overflowing the lands of the claimant, from which the damages claimed resulted. The Board of Claims allowed no interest, nor did this court. In adding to the award a sum of over $5,000 this court acted, in some sense, as a court of original jurisdiction, and in making up the sum which was to constitute the final award it refused to allow an item of interest claimed. Now it is admitted that a court or jury charged with the duty of making up the amount of damages in such cases *may* refuse to allow interest, and that is precisely what this court did and nothing more, and, therefore, the case is in harmony with the rule above stated, and with the cases from which we have deduced it. It is far from holding that it is error when, in such a case, the jury or the original court, after considering all the facts and circumstances bearing upon the loss, allows interest, in the exercise of discretion, as part of the indemnity to which the party is entitled. It simply recognized the rule that interest in such cases was not a matter of right, but of sound discretion, and held that the claimant was fully indemnified for his loss without adding interest. It is true that the learned judge who gave the opinion cited the cases arising upon contract in which it has been held that interest is not allowable, and remarked that he found no case justifying an allowance of interest. That was probably an inadvertence, but the decision refusing interest was right, though the reasons may have been based upon a principle applicable to another class of actions. It must be remembered that the court was not reviewing any question decided below in regard to interest, but seeking to make up for itself a new award from the items of the claim appearing in the record, and whatever was said by way of argument,

and as the reason for throwing out an item of interest on a sum claimed to have been expended in restoring or reclaiming the land, cannot be considered as the judgment of the court on the question now under consideration. That question was not noticed in the argument, and was not involved in the case except, perhaps, as a matter of discretion. For these reasons the judgment should be affirmed.

All concur, except EARL, Ch. J., FINCH and GRAY, JJ., dissenting.

Judgment affirmed.  _____