**VALDAN SPORTSWEAR t/a Valdan Clothing Co., Maurice Uchitel, Jack Uchitel and Daniel Rubin, Plaintiffs,**

v.

**MONTGOMERY WARD & CO., INCORPORATED, Joel M. Berlin, John Doe and Richard Roe, Defendants.**

No. 82 Civ. 6324.

United States District Court, S.D. New York.

July 24, 1984.

Saxe, Bacon & Bolan, P.C., New York City, for plaintiffs; John Lang, New York City, of counsel.

Ronald S. Platt, New York City, for defendants; Kenneth A. Finder, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, Valdan Sportswear, trading as Valdan Clothing Co. ("Valdan"), a maker of men's clothing,[1] commenced this diversity action against Montgomery Ward & Co., Inc. ("Ward"), Joel Berlin ("Berlin"), at relevant times Ward's merchandise manager for men's clothing, and two unnamed individuals. The complaint alleges seven distinct claims. The first six, which are not directly at issue here, assert claims for damages caused by Ward's alleged breaches of five contracts under which Ward was obligated to purchase men's suits from Valdan. The seventh alleges that Ward, Berlin, and the unnamed defendants entered into a "conspiracy" to "destroy Valdan," whereby Berlin "would [falsely] represent" Ward's intention to continue doing business with Valdan after Ward went out of the suit business in 1982.[2] Plaintiff further alleges that it "relied upon defendants'

---

**1.** Also originally named as plaintiffs are Maurice and Jack Uchitel, and Daniel Rubin, Valdan shareholders. These individual plaintiffs have requested leave to withdraw their claims, which the Court grants. Indeed, if the request were not granted, the Court would be compelled to dismiss the action for lack of jurisdiction, since

Maurice Uchitel is a citizen of New York and Ward is alleged to maintain its principal place of business in New York. *See* 28 U.S.C. § 1332(c) (1982).

**2.** Complaint ¶ 35.

false representations, as aforesaid," [3] entering into a lease for new production facilities, and foregoing business opportunities with others.

Two sets of motions are before the Court. In the first, plaintiff moves to amend the complaint by naming, as additional defendants and members of the conspiracy alleged in the seventh claim, Raleigh Warner, Jr. ("Warner"), the chairman of Mobil Oil Co., Ward's parent corporation, and Steven L. Pistner ("Pistner"), Ward's president. Defendants oppose the motion to amend and cross-move to dismiss plaintiff's seventh claim.

The second series of motions relates to the parties' discovery disputes. Defendants move for an order imposing sanctions pursuant to Rule 37, Fed.R.Civ.P., claiming that plaintiff has failed to comply with an order entered August 4, 1983, by Judge Robert J. Ward of this Court,[4] which required plaintiff to comply with defendants' request for the production of documents and answers to deposition questions, among other matters.[5] Plaintiff opposes the motion and cross-moves for an order compelling defendants to comply with plaintiff's document requests, which, in turn, defendants oppose.

## MOTIONS TO AMEND AND TO DISMISS

■ Although Rule 15 provides that leave to amend shall be granted freely, leave need not be granted to permit an amendment embodying plainly defective claims.[6] The Court is convinced, upon a careful study of the proposed amended complaint, that the motion to amend the seventh claim would be futile and that the

defendants' motion to dismiss the existing seventh claim must be granted.

■ The allegations of the proposed amended complaint, except for those seeking to add Warner and Pistner as defendants and participants in the alleged "conspiracy," are identical to those of the original complaint. As originally pleaded, the seventh claim is at best a hodgepodge of allegations drawing in seeming random fashion from the law of fraud, prima facie tort, and civil conspiracy. The averments do not properly plead a claim upon which relief can be granted. An essential element of a fraud claim is that defendant actually made to plaintiff a false or materially misleading statement.[7] In this regard, however, the complaint alleges only as follows:

Upon information and belief, it was part of said conspiracy that defendant Berlin *would* represent to and assure plaintiff[ ], repeatedly, that the relationship between defendant Montgomery Ward and plaintiff Valdan was alike unto the relationship of "partners."

It was further part of said conspiracy, upon information and belief, that defendant Berlin *would* represent to and assure plaintiff[ ], repeatedly, that when defendant Montgomery Ward went out of the suit business following the spring season, 1982, said defendant would continue its business relationship with plaintiff Valdan through the purchase from said plaintiff of "separates" which defendant Montgomery Ward was substituting for suits in its retail business.

Upon information and belief, it was further part of said conspiracy that defendant Berlin ... *would go* to plaintiff Valdan's factory in Los Angeles, further

---

**3.** *Id.* ¶ 38.

**4.** The action was transferred from Judge Ward's docket following Judge Ward's submission of a notice of recusal on September 27, 1983.

**5.** Judge Ward also ordered that executed copies of Maurice Uchitel's and Daniel Rubin's deposition be returned to defendants.

**6.** *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

**7.** *Sabo v. Delman,* 3 N.Y.2d 155, 159, 143 N.E.2d 906, 907, 164 N.Y.S.2d 714, 716 (1957); *Reno v. Bull,* 226 N.Y. 546, 550, 124 N.E. 144, 145 (1919); *Deyo v. Hudson,* 225 N.Y. 602, 612, 122 N.E. 635, 638 (1919).

assuring defendants of the continuing business relationship.[8]

Allegations that a defendant "would" make statements are no indication that statements actually were made. Even assuming that plaintiff's allegation that it "relied upon defendants' false representations, as aforesaid"[9] impliedly alleges that the statements referred to actually were made, the complaint fails to allege the "fraud" with the particularity required by Rule 9(b), Fed.R.Civ.P. The precise statements made, and the date and place they were made, must be alleged to comply with the Rule.[10] The seventh claim lacks these allegations and, accordingly, fails properly to allege fraud.

 Plaintiff's contention that the seventh claim pleads a cause of action for prima facie tort is also without merit. An essential element of such a claim is the existence of special damages.[11] The complaint asserts that false representations "caused plaintiff Valdan to enter into a new lease for premises in which to have production facilities with which to make the separates and caused plaintiff Valdan not to seek and obtain business from others."[12] The ad damnum clause then avers that "[p]laintiff[ ] ha[s] been damaged in at least the sum of $1,000,000.00."[13] No attempt is made to allocate the damage between out-of-pocket expenses unnecessarily incurred and losses due to foregone opportunities. In the absence of such specification, the seventh claim must fail under a prima facie tort theory.[14]

 As plaintiff acknowledges, "in New York there is no substantive tort of civil conspiracy."[15] Allegations of a civil conpiracy, therefore, are proper only for the purpose of establishing joint liability by co-participants in tortious conduct.[16] Because the seventh claim fails to allege any act of tortious conduct, the claim must be dismissed. And, entirely apart from the foregoing, dismissal is also required, because the alleged conspirators consist of only the corporation, Ward, and its employees. The law is well settled that "there is no conspiracy when two or more agents of a corporation take action on behalf of the corporation ...."[17] As noted above, the proposed amended complaint is identical to the original except insofar as it names Warner and Pistner as additional co-conspirators. The proposed amended complaint thus contains the same defects noted above.

 Even without these defects, however, the proposed amendment to include other defendants is patently without substance. The amendment is sought on the basis of an affidavit, not by any officer of plaintiff, but rather by plaintiff's attorney, who alleges that:

---

8. Complaint ¶¶ 34–36 (emphasis added).

9. *Id.* ¶ 38.

10. *See Billard v. Rockwell Int'l Corp.*, 683 F.2d 51, 57 (2d Cir.1982).

11. *See Burns Jackson Miller Summit & Spitzer v. Linder*, 59 N.Y.2d 314, 322, 451 N.E.2d 459, 467, 464 N.Y.S.2d 712, 720 (1983).

12. Complaint ¶ 38.

13. *Id.* ¶ 39.

14. *See Sbrocco v. Pacific Fruit, Inc.*, 565 F.Supp. 15, 16–17 (S.D.N.Y.1983); *Shaitelman v. Phoenix Mut. Ins. Co.*, 517 F.Supp. 21, 25 (S.D.N.Y. 1980); *cf. Drug Research Corp. v. Curtis Pub. Co.*, 7 N.Y.2d 435, 166 N.E.2d 319, 199 N.Y.S.2d 33 (1960) (special damages in libel action); *McCullough v. Certain Teed Prods. Corp.*, 70 A.D.2d 771, 417 N.Y.S.2d 353 (1979) (specifica-

tion requirement held to be met where only one type of damage alleged).

15. *Powell v. Kopman*, 511 F.Supp. 700, 704 (S.D. N.Y.1981) (*citing ABKO Indus. Inc. v. Lennon*, 52 A.D.2d 435, 437, 384 N.Y.S.2d 781, 783 (1976); *see Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir.1981).

16. *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir.1981).

17. *People v. 11 Cornwell Co.*, 695 F.2d 34, 41 (2d Cir.1982); *see Girard v. 94th St. & 5th Avenue Corp.*, 530 F.2d 66, 70–71 (2d Cir.), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Bereswill v. Yablon*, 6 N.Y.2d 301, 305, 160 N.E.2d 531, 533, 189 N.Y.S.2d 661, 664 (1959); *cf. Copperweld Corp. v. Independence Tube Corp.*, — U.S. —, — – —, 104 S.Ct. 2731, 2743–46, 81 L.Ed.2d 628 (U.S.1984) (Sherman Act conspiracy is not alleged by averments of "intra-enterprise" agreements).

Raleigh Warner, Jr. is Chairman of the Board of Mobil Oil Corporation. Mobil Oil Corporation owns Montgomery Ward and Company. Upon information and belief, Steven L. Pistner, Joel M. Berlin and other officers of Montgomery Ward and Company could not have breached the aforementioned contracts nor could it have made the decision to cease doing business with Valdan Sportswear without Mr. Warner's participation and acquiescence in the conspiracy.[18]

Close scrutiny of the voluminous papers submitted on this motion leaves one with the settled conviction that the foregoing "upon information and belief" allegation, and others of similar thrust, which together comprise the basis for the proposed amendment to add Warner and Pistner in a claim charging a conspiracy, have been included for the purpose of furthering a "strike suit" to coerce a settlement of what is or should be a simple action for breach of contract.[19] The motion to amend is, accordingly, denied.[20]

## THE DISCOVERY MOTIONS

Analysis of the respective discovery motions must start with Judge Ward's order of August 4, 1983, which required plaintiff to: (1) comply with defendants' March 23, 1983, request for the production of documents; (2) return executed transcripts of the depositions of Maurice Uchitel and Daniel Rubin, which were taken on March 17 and 25, 1983, respectively, together with "all information requested therein"; and (3) provide the answers of Maurice Uchitel to questions posed, but not answered, at his deposition. Judge Ward further ordered compliance with the foregoing mandate, or a specification of reasons for noncompliance, by August 24, 1983.

Plaintiff's attorney submitted information by letter on August 24, 1983, purporting to comply with Judge Ward's order. Defendants allege numerous deficiencies with the August 24, 1983, response, including (1) a failure to mark documents as required by Rule 34(b), Fed.R.Civ.P.; (2) failure to enclose documents stated to be enclosed in plaintiff's counsel's letter; (3) failure to provide the answers to deposition questions in the form of sworn testimony or affidavits; (4) failure timely to return the deposition transcripts; and (5) refusal to provide documents on the ground that documents did not exist notwithstanding that plaintiff, in deposition testimony, admitted that such documents did exist.

In a lengthy answering affidavit, plaintiff's counsel denies these charges and asserts full compliance with the August 4, 1983, order. Defendants, by their counsel, have in an equally lengthy response challenged plaintiff's explanations, and assert that on the record presented sanctions are in order. The sanctions defendants seek—orders striking plaintiff's pleadings or barring proof on particular claims—in effect amount to dismissal of the remaining claims. Such drastic action is authorized only when disobedience of a discovery order derives from a party's "willfulness, bad faith, or ... fault[.]"[21] In addition, any sanction ordered pursuant to Rule 37 "must be specifically related to the particular 'claim' which was at issue in the order to provide discovery."[22]

On the record presented, the Court is of the view that the imposition of ex-

18. Aff. of John F. Lang ¶ 9 (Sept. 2, 1983).

19. Plaintiff's fraud/prima facie tort/conspiracy allegation is thus not unlike "vexatious litigation" brought under section 10(b) of the Securities Exchange Act of 1934, *see Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 740, 95 S.Ct. 1917, 1927, 44 L.Ed.2d 539 (1975) ("The very pendency of the lawsuit may frustrate or delay normal business activity of the defendant which is totally unrelated to the lawsuit.").

20. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

21. *Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958); *see National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam).

22. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 707, 102 S.Ct. 2099, 2107, 72 L.Ed.2d 492 (1982).

treme sanctions is not justified at this time, despite the plaintiff's procrastination and delay in complying with the order of Judge Ward.[23] Nevertheless, a lesser sanction of an award of attorneys' fees is in order as a result of plaintiff's obstructive conduct. Plaintiff does not deny that several documents ordered produced by August 24, 1983, including the lease relevant to the now-dismissed seventh claim, were not produced until the eve of argument of this motion, months after the August 24, 1983, deadline. These failures are without excuse, and are clear violations of the order. The defendants have been put to much effort and expense in order to enforce compliance with Judge Ward's order. Accordingly, the Court awards defendants $1,000 as the reasonable expense of preparing the instant motion for sanctions, without which it is doubtful even the late production of documents would have been made. Defendants' motion for further sanctions is denied without prejudice.[24]

■ Plaintiff's motion for an order to compel discovery relates to its request for production of documents served along with their first response to Judge Ward's order on August 24, 1983. The requests fall into five categories, which the Court rules upon as follows. In the first is plaintiff's request for defendants' financial statements from 1976 to date. This request is for information not subject to discovery. Defendants have asserted no counterclaims and the financial statements are not relevant to any claim or defense asserted in the action.

In the second category are requests with which the Court finds defendants are complying or have complied. These include demands for Berlin's "telephone records,

appointment books[,] and memori[alized] conversations and meetings," (Request No. 12); copies of "records indicating names and addresses of firms or persons to whom defendant sold piecegoods" referrable to the contracts at issue (Request Nos. 17 and 18); and copies of "invoices, receipts, shipping documents and any other documents showing how many units of finished garments defendants received from plaintiffs" in the relevant period (Request No. 19). If they have not done so already, defendants shall comply with these requests, insofar as they state they are prepared to do so, within twenty days of date.

In the third category are requests to which the defendants objected to as overbroad, but which plaintiff has narrowed.[25] The Court orders compliance with the requests, as narrowed, within twenty days of date.

■ In the fourth category are requests for defendants' own copies of documents defendants have previously requested from plaintiff. Defendants object to these requests as burdensome and irrelevant because defendants do not seek damages. It was no less burdensome to plaintiff to supply these documents than it may be to the defendants. Defendants' copies of the documents are within the scope of discovery. One party's file of a particular class of documents may vary substantially from that of an adversary, and may lead to additional admissible evidence.[26] Defendants shall comply with the requests so objected to[27] within twenty days. The final category includes two miscellaneous requests, for copies of the cancelled checks by which Ward paid Valdan for goods purchased, and for Ward's books and records

---

**23.** *See id.* at 707–08, 102 S.Ct. at 2107 (sanction authorized after "repeated orders from the court to provide the requested material," warnings of "possible sanction," and "repeated" failure to comply with numerous discovery agreements).

**24.** Defendants' motion to extend the time for discovery is denied. However, plaintiff is reminded of its continuing duty to supplement responses to discovery requests. *See* Rule 26(e)(2)(B).

**25.** *See, e.g.,* Aff. of John F. Lang ¶¶ 47, 48 (Jan. 19, 1984).

**26.** *See* 4A J. Moore & J. Lucas, Moore's Federal Practice ¶ 34.12 (2d ed. 1983).

**27.** *See, e.g.,* Reply Aff. of Ronald Platt at ¶¶ 34, 40.

used to compute net gross purchases from plaintiff. Defendants have not offered any persuasive reason why these documents are not subject to discovery. The Court orders them produced within twenty days.

So ordered.