**EAST COAST NOVELTY COMPANY, INC., Plaintiff,**

v.

**The CITY OF NEW YORK, Police Inspector Frank Biehler and Police Detective Mitchell Kolpan, a/k/a Eric Vitale, Defendants.**

No. 90 Civ. 2108 (RWS).

United States District Court, S.D. New York.

Jan. 25, 1994.

Alan Kahn, c/o Robert Blossner, New York City, for plaintiff.

O. Peter Sherwood, Corp. Counsel of the City of New York, New York City (Paul Aronson and John P. Woods, Asst. Corp. Counsel, of counsel), for defendants.

## OPINION

SWEET, District Judge.

Plaintiff East Coast Novelty Company ("East Coast") has moved *in limine* for an order precluding Defendants City of New York (the "City"), Frank Biehler ("Inspector Biehler"), and Mitchell Kolpan ("Detective Kolpan") (collectively the "Defendants") from introducing at trial any evidence, testimony or reference primarily concerning: (1) the prior arrests or convictions of East Coast's principals; (2) references to "organized crime," "La Cosa Nostra," or "the Mafia"; and (3) the invocation of the Fifth Amendment privileges during the respective depositions of Louis and Benedetto Cinquegrana. In turn, the Defendants have moved *in limine* for an order: (1) dismissing the Plaintiff's sixth cause of action concerning conspiracy under state or federal law; and (2) limiting the availability and calculation of Plaintiff's alleged damages.

For the reasons set forth below, the motions of East Coast and the Defendants are granted in part and denied in part.

### Parties

East Coast is a New Jersey corporation authorized to do business in the State of New York. Its principal office is in the City of Newburgh, New York, and its primary business is importing Class "C" fireworks.

The City is a domestic municipal corporation with full governmental authority, existing under the laws of the State of New York.

Inspector Biehler is an Inspector with the New York City Police Department (the "Department"), who was the ranking officer in charge of the Manhattan South Public Morals Division. Detective Kolpan was an undercover officer with the Department.

### Prior Proceedings and Facts

The relevant proceedings and facts are fully set forth in the prior opinions of this Court, familiarity with which is presumed. *See East Coast Novelty Co. v. City of New York,* 781 F.Supp. 999, 1002–03 (S.D.N.Y. 1992) ("*East Coast I*"); *East Coast Novelty Co. v. City of New York,* 809 F.Supp. 285, 287–88 (S.D.N.Y.1992) ("*East Coast II*"). The underlying events at issue concern the Department's seizure of the Plaintiff's entire inventory of fireworks in Newburgh, New York. East Coast alleges that it is a properly licensed importer of fireworks that has complied with the pertinent governmental authorities.

The fireworks were seized as part of "Operation Skyrocket," initiated by the Depart-

ment after two successive Fourth of July fireworks displays at the Bergen Hunt and Fish Club. After the fireworks were seized, a destruction hearing was held. The confiscated inventory was ordered to be destroyed, and the fireworks were then taken to the Department's Rodman's Neck facility where they were destroyed.

The present motions were argued on January 18, 1994, final papers were submitted to the Court as of January 24, 1994 and the motions were considered fully submitted on that date. The trial of this action is presently scheduled to commence on February 4, 1994.

### Discussion

#### I. Admission of Prior Arrests, Convictions, and Alleged "Organized Crime" Connections of the Principals Will Be Determined At Trial

In 1981 and 1982, Louis and Benedetto Cinquegrana, alleged by the Defendants to be the principals of East Coast, were convicted of conspiracy to manufacture and distribute explosives (M–80's) in violation of federal law.[1] Since that time neither has been the subject of criminal proceedings.

The Defendants seek to admit evidence of the Cinquegranas' prior convictions.[2] The Defendants contend that the prior convictions of Benedetto and Louis Cinquegrana reveal the Principals' intent, knowledge, motive and state of mind with respect to East Coast's damage claims. For example, Defendants claim that admission of these prior convictions will shed light on whether Louis Cinquegrana had the requisite intent to make an illegal sale to Kolpan, East Coast II, 809 F.Supp. at 289, and whether Benedetto Cinquegrana had a criminal intent in introducing Louis to Detective Kolpan.

#### A. The Admissibility of Prior Convictions Under Rule 404(b) Will Be Determined At Trial

█ Rule 404(b) of the Federal Rules of Evidence, entitled "Other Crimes Wrongs or Acts," provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under Rule 404(b) four criteria for determining the admissibility of other acts, or prior convictions, must be considered, including: (1) the proper purpose; (2) the relevance; (3) the probative-prejudicial balance; and (4) the ability to limit damaging evidence as provided by Rule 105. See Huddleston v. United States, 485 U.S. 681, 689–92, 108 S.Ct. 1496, 1501–02, 99 L.Ed.2d 771 (1988). The Second Circuit generally allows into evidence relevant facts regarding a defendant's prior crimes except to the extent such prior crimes would tend to prove only criminal propensity. United States v. Colon, 880 F.2d 650, 656 (2d Cir.1989); United States v. Brennan, 798 F.2d 581, 589–90 (2d Cir.1986), cert. denied, 490 U.S. 1022, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989).

█ It is difficult for a court to weigh the probative-prejudicial balance before the commencement of a trial. See, e.g., United States v. Benedetto, 571 F.2d 1246, 1249 (2d Cir.1978) ("we have emphasized that admission of such strongly prejudicial evidence should normally await the conclusion of the defendant's case, since the court will then be in the best position to balance the probative worth of, and the government's need for, such testimony against the prejudice to the

---

**1.** Louis and Benedetto Cinquegrana were indicted in the Western District of Virginia on felony charges concerning a multi-defendant, interstate conspiracy to manufacture and distribute illegal fireworks, including M–80's. On December 15, 1981, Benedetto Cinquegrana pled guilty to violating 18 U.S.C. § 371, Conspiracy, and was sentenced to a five-year suspended sentence and placed on three years probation. On July 29, 1982, Louis Cinquegrana pled guilty to conspira-

cy and was sentenced to a three year suspended sentence and placed on three years probation.

**2.** The prior convictions of Benedetto Cinquegrana of armed robbery in 1931, bookmaking in the 1930's and 1940's, and of conspiracy to distribute heroin in 1956, are too remote to be relevant to this case, and would merely prove his criminal propensity; as a result, their admission will not be permitted in this trial.

defendant."). Some courts, in criminal cases, have determined that such decisions should be made at the close of the defendant's argument before raising prior convictions as evidence of intent, because intent may in fact be inferable from the act itself. *See United States v. Danzey*, 594 F.2d 905 (2d Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979); *United States v. Alessi*, 638 F.2d 466 (2d Cir.1980).

It is evident that the admission of the Cinquegranas' prior conspiracy convictions may be relevant to the knowledge, intent, and planning of the officers at the time of seizure and thereby relevant to the propriety of the sale and the extent of the seizure, if the convictions were known to the officers. Similarly, the police officers' perception of East Coast's connections to "organized crime" will be admitted if it is relevant to the knowledge of the Defendants.

Accordingly, such questions will be determined under the traditional balancing test after the Plaintiff's evidence is presented and in the light of these conclusions.

### B. *Admission of Prior Convictions Under Rule 609 Will Be Determined At Trial*

Federal Rules of Evidence Rule 609(a) permits impeachment of a witness by evidence of conviction of a crime punishable by death or imprisonment for more than one year or for any crime, even if not a felony, which "involved dishonesty or false statement, regardless of the punishment." Fed. R.Evid. 609(a). Rule 609(b) limits the admission of convictions more than ten years old, "unless the court determines, in the interest of justice, that the probative value of the conviction, supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed.R.Evid. 609(b). The proponent of the prior conviction must give sufficient advance written notice of the intent to use such evidence to provide the adverse party with a fair opportunity to contest its use.

According to *Weinstein's Evidence*,[3] *Gordon v. United States*, 383 F.2d 936 (D.C.Cir.

1967), *cert. denied*, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968) ("*Gordon*") is the seminal case analyzing the admissibility of prior convictions for impeachment purposes. *Gordon* lists the following four factors for courts to consider: (1) the nature of the crime as acts involving fraud, resting on dishonest conduct; (2) the nearness or remoteness of the prior conviction; (3) similarity between the past crime and the charged crime; (4) the effect if the defendant does not testify out of fear of being prejudiced because of impeachment of prior convictions; and (5) the credibility of the witness. *Gordon*, 383 F.2d at 940.

East Coast seeks to exclude evidence of the Cinquegranas' convictions on the grounds that its prejudicial value outweighs the probative value of the evidence. The Cinquegranas' prior convictions of conspiracy to manufacture and distribute explosives are not by definition crimes of fraud or dishonesty, and therefore do not fall within the first *Gordon* criteria.

The second criteria, that of time, does not preclude the introduction of the evidence. Their explosives convictions are not so old as to be precluded from admission at trial. *See e.g., U.S. v. Palumbo*, 401 F.2d 270 (2d Cir. 1968) (the impeachment of a criminal defendant upheld in 1967 trial by convictions for armed robbery in 1929, breaking and entering in 1937 and 1946, receiving stolen property in 1945 and armed robbery in 1956).

The third criteria, the similarity between the "charged crime" and the prior convictions, of course is not relevant here as there is no charged crime. Rather, the evidence of the prior convictions is relevant to the Defendants' motive and intent in the action at issue as well as that of the principals of East Coast. For the same reason, the fourth factor, the importance of the testimony, weighs in favor of admitting the prior explosive manufacture convictions.

Finally, the fifth factor, credibility of the witness, militates in favor of admitting this prior conviction. In *United States v. Gilbert*, 668 F.2d 94 (2d Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469, the

---

**3.** J. Weinstein and M. Berger, *Weinstein's Evidence*, 609–34 (1993).

Second Circuit upheld the admission of a prior mail fraud conviction that was more than 10 years old because the district judge had properly found that its probative value substantially outweighed its prejudicial effect against the defendant. Had the defendant chosen to testify, "his credibility would be a crucial issue...." *Gilbert,* 668 F.2d at 97.

The Supreme Court has held that evidence of prior convictions are not generally suitable for *in limine* rulings.

A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true under Rule 609(a)(1), which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify.

*Luce v. United States,* 469 U.S. 38, 41, 105 S.Ct. 460, 463, 83 L.Ed.2d 443 (1984). *See also United States v. Feola,* 651 F.Supp. 1068, 1127 (S.D.N.Y.1987) (deferring *in limine* motions to preclude prior convictions until trial "when the record has been more fully developed."), *aff'd without op.,* 875 F.2d 857 (2d Cir.N.Y.1989).

In *United States v. Washington,* the Second Circuit held that the:

function of determining whether the probative value of defendant's testimony outweighs the prejudicial effect of his prior conviction or convictions is explicitly left to the discretion of the trial judge. Fed. R.Evid. 609(a). *United States v. Gilbert,* 668 F.2d 94, 97 (2d Cir.1981), *cert. denied,* 456 U.S. 946[, 102 S.Ct. 2014, 72 L.Ed.2d 469] (1982); *United States v. Hawley,* 554 F.2d 50, 52–53 (2d Cir.1977).

Since the ruling was requested at the beginning of the trial, the trial judge could not weigh the effect of the admissibility of the prior convictions in light of the government's case....

746 F.2d 104, 106–07 (2d Cir.1984).

Accordingly, the prior convictions of the Cinquegranas are not suitably before the Court at this time. The admission of such evidence on their cross examination will be determined by the Court upon a showing of the prior convictions' probative nature and proper consideration of their prejudicial effect if admitted.

## II. *Principals' Invocation of the Fifth Amendment*

■ "The prevailing rule is that the Fifth Amendment does not forbid adverse inference against parties in civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976). The Second Circuit has also held that refusal to answer questions upon asserting the Fifth Amendment privilege is relevant evidence from which the trier of fact in a civil action may draw whatever inference is reasonable under the circumstances. *See Brinks, Inc. v. City of New York,* 717 F.2d 700, 710 (2d Cir.1983).

The refusal of Louis and Benedetto Cinquegrana and Enrique Ponce de Leon to answer deposition questions concerning their alleged involvement in organized crime as well as their alleged violations of state and federal fireworks laws, is probative and negative inferences may be drawn against them. The refusal to answer questions which relate to the Defendants' allegations that East Coast was an "organized crime" front company and that Louis Cinquegrana was selling fireworks to Detective Kolpan as part of its normal method of doing business is obviously relevant to the Defendants' case. East Coast itself, of course, may not assert a privilege against self-incrimination. *See U.S. v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944).

■ Accordingly, the Defendants are not precluded from drawing the invocations of the Fifth Amendment to the attention of the jury which may be allowed to draw adverse inferences against the Plaintiff's principals.

### III. *The Conspiracy Cause of Action*

■ East Coast's sixth cause of action, apparently conspiracy,[4] is not by itself a cognizable tort under New York law. *See Alexander & Alexander, Inc. v. Fritzen,* 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 503 N.E.2d 102 (1986) (stating "as we long ago held, 'a mere conspiracy to commit a [tort] is never of itself a cause of action' ... [a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort."); *see also Greystone Partnerships Group, Inc. v. Koninklijke Luchtvaaart Maatschappij N.N.,* 815 F.Supp. 745, 758–59 (S.D.N.Y.1993); *Harold F. Shepherd Real Estate, Inc. v. Gibbs,* 169 A.D.2d 814, 565 N.Y.S.2d 182, 183 (2d Dep't 1991); *Midtown Candy Co., Inc. v. Helmsley–Spear,* 160 A.D.2d 484, 554 N.Y.S.2d 149 (1st Dep't 1990).

"The pleading of a conspiracy may be made only to connect the actions of the individual defendants with an actionable injury and to establish that these acts flow from a common scheme or plan." *Smukler v. 12 Lofts Realty, Inc.,* 156 A.D.2d 161, 163–64, 548 N.Y.S.2d 437 (1st Dep't 1989). *See also Schwartz v. Society of New York Hospital,* 605 N.Y.S.2d 72 (1st Dep't 1993) (holding that "[a]lthough tort liability may be imposed based on allegations of conspiracy which 'connect nonactors, who might otherwise escape liability, with [tortious] acts of their coconspirators' (*Burns Jackson Miller Summit & Spitzer v. Lindner,* 88 A.D.2d 50, 72, 452 N.Y.S.2d 80, *aff'd* 59 N.Y.2d 314, 464 N.Y.S.2d 712, 451 N.E.2d 459; *see also Noble v. Creative Technical Serv.,* 126 A.D.2d 611, 511 N.Y.S.2d 51), more than a conclusory allegation of conspiracy or common purpose is required to state a cause of action against such nonactor.").

■ However, under New York law, allegations of conspiracy are properly made for the purpose of establishing joint liability by coparticipants of independent tortious conduct. *See Grove Press, Inc. v. Angleton,* 649 F.2d 121, 123 (2d Cir.1981); *John's Insulation, Inc. v. Siska Construction Co.,* 774 F.Supp. 156, 161–62 (S.D.N.Y.1991). In order to sustain a conspiracy claim, the Plaintiff must plead specific wrongful acts constituting an independent tort. *Valdan Sportswear v. Montgomery Ward & Co.,* 591 F.Supp. 1188 (S.D.N.Y.1984).

"The damage for which recovery may be had in a civil action is not the conspiracy itself but the injury to the plaintiff produced by specific overt acts." *Rutkin v. Reinfeld,* 229 F.2d 248, 252 (2d Cir.), *cert. denied,* 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956) (holding a conspiracy charge "is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts."). *Cf. Local 144, Hotel, Hosp., Nursing Home & Allied Servs. Union v. C.N.H. Management Assocs.,* 741 F.Supp. 415, 421 (S.D.N.Y.1990) (finding that since allegation of conspiracy does not state a separate cause of action, defendants' § 1983 counterclaim against the union is only valid to the extent the underlying conduct actually states a cause of action.).

East Coast's sixth cause of action does not state a conspiracy claim in federal law. The Plaintiff does not invoke the term conspiracy, nor does it describe acts or a set of concerted facts necessary to fulfill even the most basic of notice requirements. *Cf. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* — U.S. —, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (rejecting unanimously heightened pleading requirements in § 1983 civil rights cases alleging municipal liability).

This court has previously held that municipal liability is a question of fact since "the operation appears to have been a large-scale operation, involving numerous high-level officers, operating to Chief Johnston's directive ... pursuant to a stated policy of the Police Department." *East Coast I,* at 1011. Nevertheless, the Plaintiff has neither alleged a specific set of facts constituting an "agree-

---

4. The Plaintiff has not formally alleged conspiracy: in the amended complaint, in the pre-trial order, or in its reply papers to the Defendants' motion *in limine.* The characterization of this cause of action was made by the Defendants in their motion *in limine,* although the conspiracy charge makes an appearance in the Plaintiff's request for jury instructions in the joint pre-trial order. At oral argument of the motion, Plaintiff contested not the characterization of its sixth cause of action as a conspiracy claim, but only the late date of such a motion.

ment" or "plan" on the part of the Defendants, nor has it invoked the term conspiracy its complaints or in any memorandum of law.

In light of these conclusions, and the fact that the Plaintiff has not replied to the Defendants' motion *in limine* seeking to dismiss this alleged conspiracy cause of action, except to object to its tardiness, it seems unlikely that the Plaintiff's sixth cause of action will prevail. However, it is troublesome to dismiss a claim upon a pre-trial motion *in limine*. Accordingly, in light of the conclusions stated above, the sixth cause of action may be maintained as a claim, for the time being, but will be reviewed at the close of Plaintiff's case.

## IV. The Calculation of Damages in Conversion and Section 1983

■ Defendants contend that public policy denies East Coast the right to recover any damages under a federal substantive due process violation or under New York state law for conversion because East Coast has failed to show the existence of a property right which was allegedly deprived. Defendants argue that a party may "not be permitted to profit by his own fraud, or to take advantages of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime." *Riggs v. Palmer*, 115 N.Y. 506, 511, 22 N.E. 188 (1889) ("*Riggs*"). In short, the Defendants assert that since the possession of the fireworks was determined to be illegal at the destruction hearing, the Plaintiff may not pursue damages for their deprivation.[5]

Pursuant to *Riggs*, damages have been precluded against many individuals involved in a wide range of illegal activities. *See, e.g., Hofferman v. Simmons*, 290 N.Y. 449, 455–57, 49 N.E.2d 523 (1943) (gamblers not able to bring replevin action to recover sums seized in police raid); *Carr v. Hoy*, 2 N.Y.2d 185, 187–88, 158 N.Y.S.2d 572, 139 N.E.2d 531 (1957) (plaintiff found guilty of outraging public decency for charging money to photograph naked models was barred from bringing conversion action against local sheriff on

grounds money was proceeds of the crime); *Spivak v. Sachs*, 16 N.Y.2d 163, 167–68, 263 N.Y.S.2d 953, 211 N.E.2d 329 (1965) (unlawful practice of law); *McConnell v. Commonwealth Pictures*, 7 N.Y.2d 465, 199 N.Y.S.2d 483, 166 N.E.2d 494 (1960) (bribery); *Hofferman v. Simmons*, 290 N.Y. 449, 455–57, 49 N.E.2d 523 (1943) (gambling); *Barker v. Kallash*, 63 N.Y.2d 19, 24–6, 479 N.Y.S.2d 201, 468 N.E.2d 39 (1984) (child injured while making pipebomb may not sue child who sold him fireworks containing gunpowder).

A similar notion has also been applied in federal actions. *See, e.g., U.S. v. Benitez*, 779 F.2d 135, 141 (2d Cir.1985) (Van Graafeiland, J., concurring) (applying *Riggs* to find that money and jewels were the product of criminal activities and therefore no property right vested in them); *Tarbert Trading Ltd. v. Cometals, Inc.*, 663 F.Supp. 561, 568–69 (S.D.N.Y.1987) (finding if illegality is inseparable from the bargain then enforcement is contrary to public policy and the court should leave the parties where it finds them). The issues remain as to whether all of the fireworks in question are contraband and whether all of the Plaintiff's property was the product of criminal activities.

In *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court held that § 1983 was a "'species of tort liability' in favor of persons who are deprived of 'rights privileges or immunities secured' to them by the Constitution." 435 U.S. at 253, 98 S.Ct. at 1046 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976)). The *Carey* Court further held that courts should look to the most analogous state tort law cause of action to determine the proper measure of damages. 435 U.S. at 257–59, 98 S.Ct. at 1049–50 (holding "'the experience of judges in dealing with private [tort] claims supports the conclusion that courts of law are capable of making the types of judgment concerning causation and magnitude of injury necessary to accord meaningful compensation for invasion of [constitutional] rights.'") (quoting *Bivins v. Six Unknown Fed. Narcotics Agents*,

---

**5.** Defendants also argue that the possession or sale of explosives without a license violates N.Y.

Labor L. § 458(1), (2); 12 N.Y.C.R.R. § 39.4.

403 U.S. 388, 409, 91 S.Ct. 1999, 2011, 29 L.Ed.2d 619 (1971) (Harlan, J., concurring in judgment)).

In *East Coast I*, 781 F.Supp. at 1011, the Court held the municipality to be immune from punitive damages for alleged § 1983 violations pursuant to the Supreme Court's holding in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). This doctrine has been extended to encompass individual officials acting in their official capacities. *See Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).

However, if an individual defendant is alleged to have acted so maliciously and wantonly, the question of imposing punitive damages against him or her, in an individual capacity becomes a question for the jury. *See, e.g., Ismail v. Cohen*, 899 F.2d 183, 186–87 (2d Cir.1990) (upholding punitive damages in § 1983 case); *Hughes v. Patrolmen's Benevolent Ass'n*, 850 F.2d 876, 883 (2d Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988) (upholding punitive damages in § 1983 case in which defendant officers acted out vendetta against plaintiff); *O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir. 1988) (upholding punitive damages in § 1983 suit against police officers who beat plaintiff in face while handcuffed); *Greiner v. County of Greene*, 811 F.Supp. 796 (N.D.N.Y.1993); *Ortiz v. Regan*, 769 F.Supp. 570 (S.D.N.Y. 1991); *King v. Macri*, 800 F.Supp. 1157 (S.D.N.Y.1992).

Accordingly, East Coast may seek compensatory damages under § 1983, in the most analogous state tort law, in this case, conversion, against Defendant New York City. East Coast may seek compensatory as well as punitive damages against the individual Defendants provided a sufficient showing of wanton or malicious conduct has been established.

■ Recovery under New York State conversion law is limited to the value of the property at the time and place of seizure plus interest.

The modern law of conversion is derived from the common law action of trover which redressed an interference with one's interest in a chattel that was substantial enough to justify compelling the wrongdoer to pay for it as in a forced sale. That is to say, the measure of damages to which the plaintiff was entitled to the value of the property at the time and place of conversion.

*Iglesias v. United States*, 848 F.2d 362 (2d Cir.1988). In New York conversion actions, a plaintiff is indemnified completely and accordingly, interest is recoverable as of right. *Id.* at 365; *see also Flamm v. Noble*, 296 N.Y. 262, 268, 72 N.E.2d 886 (1947); *Wilson v. City of Troy*, 135 N.Y. 96, 104–05, 32 N.E. 44 (1892). However, the award of interest is to indemnify the plaintiff and is not "a substitute either in amount or character for the yield the converted property would have produced." *Iglesias v. United States*, 848 F.2d at 365.

"[T]he usual measure of damages is the value of the property at the time and place of conversion, plus interest ... profits lost are generally disallowed ... though they may be recoverable if they may reasonably be expected to follow from the conversion." *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1st Dep't 1980) (citations omitted). Lost profits are generally disallowed because the fixed legal interest rate replaces the uncertain and indefinite profits that a plaintiff might have made either from the possession of the goods or their equivalent in money. *Wehle v. Haviland*, 69 N.Y. 448, 450–51 (1877).

Accordingly, East Coast may only seek damages for the value of the goods allegedly converted plus interest under the New York State law of conversion.

### Conclusion

For the reasons set forth above, East Coast's motion to preclude the Defendants from using evidence relating to the Louis and Benedetto Cinquegranas' prior conspiracy conviction is denied at this time. East Coast's motion to preclude the Defendants from using at trial other evidence related to the Principals' (Benedetto and Louis Cinquegrana or Enrique Ponce De Leon) other prior acts and alleged "organized crime" con-

nections will be determined at trial. East Coast's motion to bar the Defendants from referring to the Principals' invocation of the Fifth Amendment is denied. Defendants' motion *in limine* seeking to dismiss the conspiracy cause of action is denied. Upon Defendants' motion, compensatory damages are limited to the cost plus interest with respect to the conversion and § 1983 claims. Proof of punitive damages claim against the non-municipal Defendants will be allowed.

It is so ordered.