L.B., Plaintiff,

v.

THE TOWN OF CHESTER, Town of Chester Police Chief Brian Jarvis, Magistrate Peter Masella, Police Officer J. Brendan Medican, the City of New York, New York City Department of Homeless Services, Commissioner Martin Oesterreich, and Department of Homeless Services Police Officers Conde and Brock, Defendants.

No. 01 Civ. 3204(RWS).

United States District Court, S.D. New York.

Nov. 19, 2002.

Urban Justice Center, New York, NY, By: Corinne A. Carey, for Plaintiff, of counsel.

Traub Eglin Lieberman Straus, Mid-Westchester Executive Park, Thre Skyline Drive, Hawthorne, NY, By: Mario Castellitto, for Defendants, of counsel.

Office of the Corporation Counsel, Special Federal Litigation Division, New York, NY, By: Lisa Black, for Defendants, of counsel.

### OPINION

SWEET, District Judge.

Defendants from the Town of Chester have moved pursuant to Rules 21 and 22, S.D.N.Y. Div. Bus. R., to transfer this action to White Plains and to dismiss pursuant to Rule 12(b)(6) Fed.R.Civ.P., the complaint of plaintiff L.B. seeking injunctive and declaratory relief and damages as an authorized needle exchange program participant. The defendants from New York City have joined in the motion to dismiss, but not the motion to transfer. For the reasons stated below, the motion to transfer is denied, and the motions to dismiss are granted in part and denied in part.

Defendants are the Town of Chester ("Town"), Town of Chester Chief of Police Brian Jarvis ("Chief Jarvis"), Magistrate Peter Masella ("Magistrate Masella"), and Police Officer J. Brendan Medican ("Officer Medican"), collectively the "Town Defendants"; and the City of New York, Commissioner Martin Oesterreich of the New York City Department of Homeless Services ("Commissioner Oesterreich"), Department of Homeless Services Police Officer Conde ("Officer Conde"), and Department of Homeless Services Police Sergeant Brock ("Sergeant Brock"), collectively the "New York City Defendants."

Defendants Officer Medican, Officer Conde and Sergeant Brock (the "Officers") are sued in their official and individual capacity. The other individual defendants are sued in their official capacity only.

*Prior Proceedings*

Plaintiff L.B. ("Plaintiff") commenced this action pursuant to 42 U.S.C.A. § 1983 and New York state law seeking injunctive and declaratory relief as an registered needle exchange program participant allowed to possess hypodermic instruments (needles and syringes) obtained from an authorized New York State needle exchange program. Plaintiff also seeks compensatory and punitive damages arising out his arrest on charges of criminal possession of a hypodermic instrument.

Plaintiff has asserted claims under the Fourth and Fourteenth Amendments to the United States Constitution for false arrest and imprisonment against the Officers and Magistrate Masella; for malicious prosecution against the Officers; for failure to train and for an unconstitutional policy or practice against Chief Jarvis, the Town, Commissioner Oesterreich and the City of New York; and a variety of New York State law claims.

The Town Defendants have moved to transfer the action. They have also moved

to dismiss for failure to state a claim on the grounds that there was probable cause for the arrest; that Officer Medican is entitled to qualified immunity; that the Plaintiff fails to plead a policy, practice or custom of the Town violating Plaintiff's rights, which also constitutes a failure to properly plead against Town officials, Chief Jarvis, Magistrate Masella and Officer Medican in their official capacities; that Magistrate Masella is entitled to absolute judicial immunity with respect to federal and state claims; that the State law claims are insufficiently pled.

New York City Defendants have moved to dismiss on the grounds of probable cause, qualified immunity, and municipal liability, as above. They also move to dismiss claims against Commissioner Oesterreich, for failure to allege any personal involvement, and the claims of malicious prosecution against Sergeant Brock and Officer Conde.

The Town Defendants and New York City Defendants submitted motions that were heard and marked submitted on April 17, 2002.

*Facts*

The facts set forth below are as alleged in the complaint.

Plaintiff L.B. is fifty years old and is a registered participant in the New York Harm Reduction Educators ("NYHRE"), a state-authorized needle exchange program located in Manhattan. When he enrolled, Plaintiff was issued a participant identification card with an individual code number. Plaintiff, who was homeless and residing at the Bellevue Men's Shelter in New York City, was given notice that he was being transferred to Camp LaGuardia, a shelter located in the Town of Chester located in Orange County. Camp LaGuardia is operated by New York City Department of Homeless Services ("DHS").

Upon his arrival at Camp LaGuardia on or about April 17, 2000, Plaintiff was interviewed by a nurse at the infirmary regarding his medical history, and he voluntarily disclosed that has was an injection drug user and that he was in possession of clean hypodermic needles. The nurse stepped out of the room and relayed this information to Officer Conde, a DHS police officer. Officer Conde asked Plaintiff to repeat what he had told the nurse, and Plaintiff told the officer that he had clean hypodermic needles in his possession and that he had a registration card from a needle exchange program that allowed him to carry the syringes legally. Officer Conde asked to see the syringes, which Plaintiff showed to him in their original packaging. Officer Conde then asked to see the Plaintiff's registration card, and Plaintiff handed it to the officer. The officer left for about one-half hour and conferred with his supervisor, Sergeant Brock. Sergeant Brock and Officer Conde instructed Plaintiff to accompany them to their office.

The Plaintiff asked Sergeant Brock what the problem was, and Sergeant Brock responded that it was against the law to possess hypodermic needles in Orange County. The Plaintiff explained that the card allowed him to possess needles anywhere in New York State. Sergeant Brock spoke to Officer Medican, a member of the police department of the Town of Chester, who informed Sergeant Brock that Orange County did not recognize needle exchange programs, and that the Plaintiff should be placed under arrest for possession of hypodermic instruments. Sergeant Brock returned to Plaintiff and placed him under arrest.

The Plaintiff was transported to a courthouse by officers from the Orange County Sheriff's Department. At the courthouse, Officer Medican swore out a complaint against Plaintiff for the possession of hy-

podermic instruments in violation of N.Y. Penal Law Section 220.45 (McKinney 2000).

The Plaintiff was subsequently brought before Magistrate Masella who told Plaintiff that his card was only good for the five boroughs of New York City and not valid in Orange County. The Plaintiff was told that bail was set at $500 and was held in custody for five days. The criminal charge against the Plaintiff was dismissed on August 28, 2000.

### Standard of Review

"The standard of review under Rule 12(b)(6) requires the Court to accept as true all reasonable inferences which can be drawn from the complaint. A complaint is not to be dismissed unless it appears 'beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *G–I Holdings, Inc. v. Baron & Budd*, 179 F.Supp.2d 233, 249 (S.D.N.Y.2001); *(citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### Motion to Transfer is Denied

Rule 21 of this Court's Rules for Division of Business Among District Judges provides that a civil matter shall be designated for assignment to White Plains if the claim arose in whole or in major part in the Northern Counties and at least one of the parties resides in the Northern Counties. S.D.N.Y. Div. Bus. R. 21.[1] Town Defendants contend that since the alleged circumstances which give rise to this matter (the arrest, the detention, and the initiation of criminal proceedings) took place in

Orange County, where the Town Defendants are located, the case should be transferred.

However, Rule 27 of the Local Rules of the United States District Court for the Southern District states that "[r]elated cases are heard at the place of holding court where the earliest case was filed." S.D.N.Y. Div. Bus. R. 27. The instant case was accepted as related on April 23, 2001. The Court must weigh whether reassignment is "in the interest of justice or sound judicial administration." *Rodriguez v. The County of Orange*, 1993 WL 427426, 1993 U.S. Dist. Lexis 14628, *1 (S.D.N.Y.1993) (*citing* S.D.N.Y. Rule 22).

The instant case was accepted as related to *Hammonds v. City of New York*, 00 Civ. 2687 and *Roe v. City of New York, et. al.*, 00 Civ 9062. *Hammonds* has settled, while motions in *Roe* will be decided concurrently (in the *"Roe Opinion"*) with this Opinion. According to Town Defendants, the instant case is not related because *Roe* concerns the City of New York Police Department and its alleged practice of targeting needle exchange participants and harassing them for possessing trace amounts of controlled substances.

*Roe* and the instant case involve plaintiffs who were participants in New York City needle exchange programs who have brought Section 1983 actions arising from what they allege to be unlawful arrests for the possession of hypodermic instruments. Both concern the intersection of the needle exchange plan, intended to reduce transmission of human immunodeficiency virus/acquired immune deficiency virus

---

1. Unlike the instant case, in the authorities Town Defendants cite none of the parties were identified as residents outside of Westchester. *Midway Gospel Tabernacle, Inc. v. American Economy Ins. Co.* 1995 WL 444358 (July 27, 1995 S.D.N.Y.) (transfer mandated to White Plains in context where none of the parties reside in New York City); *Gache v. Town/Village of Harrison*, 1995 WL 380175 (June 27, 1995 S.D.N.Y.) (residence of plaintiff not identified); *Tiffany v. Tartaglione*, 2001 WL 15677 (Jan. 5, 2001 S.D.N.Y.) (all parties residents of Westchester).

("HIV/AIDS"), and New York penal law, and plaintiffs in both cases have requested declaratory relief regarding proper construction of the law. Treating these cases as related would serve the interests of justice and efficiency. *See* S.D.N.Y. Div. Bus, R. 15(a). It would be inadvisable to transfer the case as it would "waste judicial resources . . . and run the risk of inconsistent findings and rulings." *Puglisi v. Underhill Taxpayers Assoc.*, 159 F.R.D. 416 (S.D.N.Y.1994).

Town Defendants' motion to transfer is denied.

### There Was No Probable Cause for Arrest

Town Defendants and the New York City Defendants urge that there was probable cause for the arrest of L.B., in which case his claim for false arrest must fail.

> Section 1983 provides, in relevant part: Every person who, under color . . . of any state law subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law.

42 U.S.C. § 1983.

■ It is well established that § 1983 is a vehicle that provides redress to a person who was arrested without probable cause, and that the elements of a false arrest claim under § 1983 are substantially the same as the elements under New York State law. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996); *Raysor v. Port Auth. of New York and New Jersey*, 768 F.2d 34, 39–40 (2d Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986). False arrest is the intentional detention of a person against his will and without a privilege to do so. *Oakley v. City of Rochester*, 71 A.D.2d 15, 18, 421 N.Y.S.2d 472 (1979), *aff'd*, 51 N.Y.2d 908, 434 N.Y.S.2d 977, 415 N.E.2d 966 (1980).

■ The existence of probable cause to arrest constitutes "a complete defense to an action for false arrest," whether the action is brought under state law or under § 1983. *Weyant*, 101 F.3d at 852 (2d Cir. 1996) (*citing Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994)). Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed by the person being arrested. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995); *United States v. Ceballos*, 812 F.2d 42, 50 (2d Cir.1987). In determining whether an arrest is valid, a court considers the information available to the officer at the time of the arrest. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Whether a suspect was acquitted later of the charges for which he or she was arrested is irrelevant to the determination of probable cause. *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *see also Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

■ The Town Defendants and City Defendants assert that the Officers had probable cause to arrest Plaintiff pursuant to Penal Law Section 220.45. The relevant statutes and regulatory scheme are presented in greater detail in the *Roe Opinion*, issued concurrently with this opinion.

In abbreviated form, however, § 220.45 provides that it is a misdemeanor to "knowingly and unlawfully" possess or sell a hypodermic syringe or needle. "Unlawfully" is defined by the provisions of the Public Health Law. N.Y. Penal Law § 220.00.

Public Health Law Section 3381 authorizes the Commissioner of Public Health (the "Commissioner") to designate classes of persons who may lawfully obtain hypodermic syringes and needles without prescriptions. Pursuant to that authority, the Commissioner has authorized needle exchange programs. To allow for lawful participation in the programs, the Commissioner has issued rules providing for the "authorization to conduct hypodermic syringe and needle exchange programs," which are codified in 10 New York Code of Rules and Regulations ("N.Y.C.R.R.") Section 80.135.

Under 10 N.Y.C.R.R. Section 80.135(a) approved needle exchange programs are allowed "to possess and furnish hypodermic syringes and hypodermic needles, without prescription when authorized by the Commissioner in connection with the distribution or collection of hypodermic syringes and hypodermic needles for the purpose of preventing the transmission of human immunodeficiency virus in users of injectable drugs . . ." Section 80.135(e) extends this benefit to individual participants in the program who "may obtain and possess hypodermic syringes and hypodermic needles without prescription from" needle exchange programs.

Individual participants, pursuant to regulation, (including the Plaintiff) are typically issued cards by the needle exchange program that identify them as needle exchange program participants. 10 N.Y.C.R.R. § 80.135(m)(9). The cards

bear the title "NYS Authorized Syringe Exchange Program Participant ID Card." The back of the card explains that it was issued pursuant to Section 80.135 of the N.Y.C.R.R. and the Public Health Law and states that the "participant can lawfully possess hypodermic needles and syringes furnished by the needle exchange program or collected by the participant for deposit with the program in all parts of New York State." The front of the card provides an individual identifying code for the participant—thus keeping the individual's participation in the program anonymous. The card also provides two telephone numbers: one for the NYS Department of Health to confirm that the needle exchange program is authorized; another a telephone and beeper number to confirm that the individual is a participant.

Given this scheme, there was not probable cause to arrest Plaintiff where he identified himself as an authorized needle exchange program participant and where, as alleged here, his status as a needle exchange program participant was not called into question. Once an individual is authorized by the Commissioner, that ends their liability as an "unlawful" possessor under the Penal Law § 220.45.

■ Town Defendants urge a different understanding of the relevant statutes. They contend that verified participation in an authorized needle exchange program is merely an affirmative defense available at trial to a charge under Penal Law § 220.45.[2]

2. They base this argument on N.Y. Public Health Law § 3396(1) which provides that "in any civil, criminal or administrative action or proceeding brought for the enforcement of any provision of this article, it shall not be necessary to negate or disprove any exception, excuse, proviso, or exemption contained in this article, and the burden of proof of any such exemption, excuse, proviso, or exemption shall be upon the person claiming

its benefit." However, § 3396(1) concerns enforcement under the Public Health Law, and thus is inapplicable to the analysis of enforcement under the Penal Law. While it is true that the definition of "unlawful" in the Penal Code is provided by cross-reference to the Public Health Law, that does not change an arrest under the Penal Code into a action or proceeding for the enforcement of the Public Health Law, as § 3396(1) clearly requires.

It must also be noted that City of New York and Town Defendants' position that authorization from the Commissioner does not create an immunity from arrest is not supported by a relevant Operations Order of the Police Department of the City of New York ("NYPD") or by the Deputy Commissioner for Legal Matters.[3] The NYPD's position, and that of the Deputy Commissioner, is that needle exchange participants are not to be arrested or charged under § 220.45. Given the aim of needle exchange programs to encourage participants to return dirty needles for clean ones, and thereby remove infected equipment from circulation, this construction is necessary.

The cases cited by Town Defendants involving possession of hypodermic instruments are inapposite to a determination of probable cause in the instant case as in none of those cases was the sole issue possession of a needle or syringe, but rath-

er there was some other criminal conduct, which obviously distorts the probable cause analysis. *People v. Monroe,* 156 Misc.2d 588, 593 N.Y.S.2d 742, 745 (1992) ("objective of allowing addicts to exchange used needles for clean ones would not be enhanced by permitting a defendant charged with possessing nine new hypodermic needles while engaged in a sale of fake heroin to an undercover officer to escape criminal liability"); *Furlow v. City of New York,* 1994 WL 714340 (Dec. 21, 1994 S.D.N.Y.) (probable cause was established to arrest and hold individual observed selling hypodermic needles, even though he claimed a medical condition but had no prescription or authorization from the Commissioner of Public Health).

The issues raised by *Standt v. City of New York,* 153 F.Supp.2d 417 (S.D.N.Y. 2001), a case cited by the Plaintiff and which relates to the investigation done by

In *People v. Strong,* 47 A.D.2d 798, 365 N.Y.S.2d 310, 311 (1975) the Supreme Court found that § 3393 of the Public Health Law (providing the same burden as present-day § 3396(1)) applied to a prosecution for possession of syringe under the Penal Law. Because the needle exchange program had not been authorized at that time, and because the statutory language is clear, that case is not controlling.

**3.** As discussed in the *Roe Opinion,* the NYPD has promulgated two Operations Orders instructing officers how to deal with participants of needle exchange programs. NYPD Operations Order 23, issued March 28, 2000; NYPD Operations Order 70, issued July 8, 1994 (there are minor modifications in the more recent Order but both are consistent with respect to the arrest provisions). The Orders instruct officers that an individual in possession of syringes and a participation card should not be arrested if the only charge is criminal possession of a hypodermic instrument. Even where arrest is affected on another charge, authorized participants should not be charged with criminal possession of a hypodermic instrument. The Orders further provide that where verification of the individual's participation or the status of the needle

exchange program is needed, the officer should telephone the relevant numbers provided on the participation card and on the Operations Order. NYPD Operations Order 23 ¶ 7, 8; NYPD Operations Order 70 ¶ 4, 5. In commenting on the Legislature's recent enactment allowing purchase of needles without prescription, the Deputy Commissioner for Legal Matters has stated that "[t]he practical effect of this law is that it creates another lawful means by which a person can possess a hypodermic needle and/or syringe without a prescription, similar to that created by the NYS Department of Health Authorized Syringe Exchange Program ... As with that program, persons in possession of hypodermic needles and/or syringes pursuant to this new law should *not* be arrested and charged with criminally possessing a hypodermic needle (Penal Law § 220.45) unless other charges (e.g., Criminal Possession of a Controlled Substance) are appropriate." Submitted in the *Roe Opinion* Def. Notice of Cr. Motion Ex. G (memorandum of Sept. 26, 2000 from Deputy Commissioner Legal Matters George A. Grasso to Chief of Department).

the Defendants at the time of arrest, are not presented here because under the facts as alleged in the complaint, Defendants did not doubt that the Plaintiff was a *bona fide* participant. The facts as alleged establish that the decision to arrest was based on whether the Commissioner's authorization was limited to New York City.

The Town Defendants' interpretation subjects any needle exchange participant, and presumably the employees of the needle exchange programs as well, to a period of arrest and incarceration until such participant or employee could show he is authorized under the Public Health Law. Possession of a needle or syringe pursuant to 10 N.Y.C.R.R. Section 80.135 is not unlawful under the Public Health Law, and arrest based on the possession of the needle or syringe, without more, constitutes a false arrest.

### Claims of Malicious Prosecution Dismissed

Plaintiff has failed to allege malice, an essential element of malicious prosecution. *Rounseville v. Zahl,* 13 F.3d 625, 630 (2d Cir.1994). Accordingly, Plaintiff's malicious prosecution claims are dismissed.

### Brock, Conde and Medican Are Not Entitled to Qualified Immunity

■ Although Plaintiff has established the violation of a constitutional right, the individual defendants may still avoid liability on the ground of qualified immunity. Qualified immunity "strikes a balance" between the "vindication of constitutional guarantees and the societal costs that inhere in litigation against public officials, including the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties." *Loria v. Gorman,* 306 F.3d 1271, 1281 (2d Cir.2002) (internal quotation marks removed) (*citing Harlow*

*v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

■ As the Supreme Court stated in *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first question to be considered in evaluating a qualified immunity defense is, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" If so, it must be determined whether that right was clearly established. *Id.* at 202, 121 S.Ct. 2151. "In other words, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (citations omitted) (citations omitted). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151.

Viewing the complaint in the light most favorable to the Plaintiff, he has alleged that he was arrested without probable cause, a constitutional violation. This violation was established at the time of Plaintiff's arrest. *See Caldarola,* 298 F.3d 156, 161 (citation omitted).

However, the question remains as to whether a reasonable officer could have believed that the circumstances established the necessary probable cause for Plaintiff's arrest. *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (qualified immunity is warranted if officers of reasonable competence could disagree on whether the probable cause probable cause test was met).

As has been discussed, the law in New York regarding possession of hypodermic needles and syringes is clear. It was objectively unreasonable for the Officers to

contravene 10 N.Y.C.R.R. § 80.135. At the time of Plaintiff's arrest, there was no question pending in any court that would have called into question the validity of the needle exchange law. There was no authority or case-law suggesting that the New York State Penal Law applied statewide, but the Public Health Law only applied in the five boroughs of New York City. Town Defendants' and New York City Defendants' motion based on qualified immunity is denied.

### Claims for Municipal Liability Under § 1983 Are Not Dismissed

 Town and New York City Defendants argue that the Plaintiff has failed to state a claim of municipal liability. In order to hold a municipality liable as a "person" within the meaning of 42 U.S.C. § 1983, a plaintiff must establish that the municipality was somehow at fault. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Monell v. Dep't of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "The Plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries ... Second, the plaintiff must establish a causal connection—an 'affirmative link'— between the policy and the deprivation of his constitutional rights." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir.1985), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987) (citation omitted).

 The requisite custom or policy may be demonstrated by reference to a single incident of unconstitutional activity if Plaintiff shows that the policy itself is unconstitutional and was the cause of the violation. *Sulkowska v. City of New York*, 129 F.Supp.2d 274, 297–8 (S.D.N.Y.2001) (*citing Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791

(1985) (plurality opinion)); *see Lauro v. City of New York*, 39 F.Supp.2d 351, 367 (S.D.N.Y.) (detective's testimony as to police procedure condoning the use of "perp walks" was sufficient for the court to find on summary judgment the existence of a departmental policy); *rev'd on other grounds*, 219 F.3d 202, 206 n. 4 (2d Cir. 2000). Plaintiff has adequately pleaded that the Town and Chief Jarvis have a policy and or custom of violating the constitutional rights of needle exchange participants by falsely arresting and prosecuting them.

At this pleading stage, the single incident involving its officers is sufficient to defeat the motion of the City of New York to dismiss the *Monell* claim against it.

### Section 1983 Claims Against Commissioner Oesterreich Are Not Dismissed

 New York City Defendants also move to dismiss the § 1983 claims against Commissioner Oesterreich based on his lack of personal involvement. However, as they recognize, personal involvement has been construed to include creating a policy or custom under which the unconstitutional practices occurred or allowed such a policy or custom continue. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994). Plaintiff has adequately pleaded personal involvement by Commissioner Oesterreich.

### Magistrate Masella IS Entitled to Absolute Immunity

 Magistrate Masella is protected by absolute judicial immunity that protects judges from suits for civil damages under 42 U.S.C. § 1983 relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991).

 Under accepted Supreme Court authority a judge, when acting in his judi-

cial capacity, "will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in the clear absence of jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

Plaintiff asserts that he was brought before Magistrate Masella, who told him that his participation card was only valid in New York City, not Orange County, and set bail at $500. Magistrate Masella was acting in a judicial capacity and there was not a clear absence of jurisdiction. Claims for damages against Masella are dismissed.

Although under *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), there was not absolute judicial immunity from a suit for prospective or injunctive relief or from suit for attorney's fees under § 1988, in 1996 Congress passed the Federal Courts Improvement Act ("FCIA") which legislatively reversed *Pulliam* in certain respects. FCIA amended § 1983 to state that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983 (amended Oct. 19, 1996 by Pub.L. 104–317, Title III, § 309(c), 110 Stat. 3853.) As Plaintiff does not allege that there is any violation of a declaratory decree or that such relief would be unavailable, the claims against Magistrate Masella for injunctive relief are also dismissed.

### State Law Claims

Plaintiff alleges the following state causes of action: 1) assault and battery; 2) violation of the right of privacy; 3) negligence; 4) emotional distress; 5) violation of rights otherwise guaranteed under the Constitution and laws of New York; and 6) conspiracy to commit all of the above.

### Assault and Battery

 Where an arrest is determined to be unlawful, a claim for assault and battery may arise. *Sulkowska,* 129 F.Supp.2d at 294 ("If an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest") (*citing Johnson v. Suffolk County Police Dep't,* 245 A.D.2d 340, 341, 665 N.Y.S.2d 440 (1997) (police officer committed a battery when he touched the plaintiff during an unlawful arrest) (*citing Budgar v. State of New York,* 98 Misc.2d 588, 414 N.Y.S.2d 463, 466 (1979) ("since the arrest was unlawful, a technical assault and battery occurred when the claimant was handcuffed and forcibly placed in the State police car")).

Because Plaintiff's arrest was allegedly unlawful, claims for assault and battery will not be dismissed against Officer Conde and Sergeant Brock.

As there is no allegation that Officer Medican touched or placed Plaintiff in apprehension of any contact the assault and battery claim against him is dismissed.

### Claims of Violation of Right of Privacy, Negligence and Emotional Distress and Unspecified Violations Are Dismissed

Plaintiff does not oppose the Town Defendants' motion to dismiss the claims based on right to privacy, emotional distress, and unspecified violations of state law or rights under the New York Constitution. Accordingly, each of these claims is dismissed.

### Conspiracy Claim Is Dismissed

In order to state a claim for conspiracy under New York law a plaintiff must allege 1) a corrupt agreement between two or more persons; 2) an overt act; 3) intentional participation in a common scheme with a view to its furtherance; and 4) a resulting injury. *Quinn v. Thomas H. Lee Co.*, 61 F.Supp.2d 13, 19 (S.D.N.Y.1999). While conspiracy is not "by itself a cognizable tort under New York law," "allegations of conspiracy are properly made for the purpose of establishing joint liability by coparticipants of independent tortuous conduct." *East Coast Novelty Co., Inc. v. City of New York*, 842 F.Supp. 117, 122 (S.D.N.Y.1994) (internal citations omitted). Here, Plaintiff has made no allegation of any agreement between two or more persons and thus this cause of action is dismissed.

### Town Does Not Have Respondeat Superior Liability for Conde, Brock or Masella

Unlike cases brought under § 1983, municipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of *respondeat superior*. The doctrine requires a relationship between the employer and the person who committed the tortuous act. *Loucks v. Community Home Care Servs.*, 209 A.D.2d 484, 618 N.Y.S.2d 826 (1994).

Plaintiff alleges that the Town is liable in *respondeat superior* for the alleged state law torts committed by Officer Conde and Sergeant Brock and Town Defendants have moved to dismiss. Although Officers Conde and Brock are employees of the City of New York Department of Homeless Services, Plaintiff has alleged in the complaint that the officers turned to Officer Medican for guidance, that they followed his instructions, arrested Plaintiff and acted as agents of the Town. However, Plaintiff has not alleged facts that would support the degree of control by the Town that would substitute for the lack of an employment relationship that would typically provide the basis of liability.

The Town has no *respondeat superior* liability with respect to Magistrate Masella because a "judicial officer is not an employee in the sense that the doctrine of *respondeat superior* can be logically applied to his acts." *Jameison v. State*, 4 Misc.2d 326, 158 N.Y.S.2d 496 (1956); *Rabinovici v. State*, 108 Misc.2d 664, 665, 438 N.Y.S.2d 460 (1981).

### Conclusion

For the foregoing reasons, Town Defendants' motion to transfer is denied. Motions to dismiss based on the existence of probable cause, qualified immunity, and failure to state *Monell* liability are denied. Magistrate Masella is entitled to absolute judicial immunity with respect to federal and state claims and the claims against them are dismissed.

Motions regarding the state law claims are granted in part and denied in part, as discussed above. City of New York's motion to dismiss Plaintiff's malicious prosecution claim is granted with respect to all defendants, and its motion to dismiss Section 1983 claims against Commissioner Oesterreich is denied.

It is so ordered.