Evrold WILLIAMS, Plaintiff,

v.

CITY OF WHITE PLAINS, White Plains Police Department, Sgt. Tiedemann, Police Officer Tassone, Police Officer Parra, Police Officer Petrosino, Police Officer Fuentas and Officer John Doe, Defendants.

No. 08 CIV 5210–WGY.

United States District Court, S.D. New York.

June 16, 2010.

Richard E. St. Paul, Patsy D. Gould-borne & Associates, Bronx, NY, for Plaintiff.

Joseph Anthony Maria, Joseph A. Maria, P.C., White Plains, NY, for Defendants.

## MEMORANDUM AND ORDER

WILLIAM G. YOUNG, District Judge.[1]

### I. INTRODUCTION

This case arises out of the arrest of the plaintiff Evrold Williams ("Williams") that occurred on March 24, 2007. Williams raises claims under 28 United States Code Section 1983, alleging arrest without probable cause, and the use of excessive force in connection with his arrest. He also brings state claims: false arrest; assault and battery; negligence in hiring and retention; negligence in training and supervision; negligence in performing the arrest; and malicious prosecution.

### A. Procedural Posture

Williams filed his complaint on June 6, 2008. [Doc. No. 1]. The Defendants City of White Plains, White Plains Police Department, Sgt. Tiedemann, Police Officer Tassone, Police Officer Parra, Police Officer Petrosino, Police Officer Fuentas, and Police Officer John Doe (the "Defendants") moved for summary judgment on October 12, 2009 [Doc. No. 8], and filed a Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def.'s Mem.") [Doc. No. 11]. Williams, represented by his counsel, did not file an opposition, but argued orally at a motion hearing held on February 23, 2010.

### B. Facts

Because Williams did not file an opposition, the only evidence on the record is the evidence submitted by the defendants in this action. In support of their motion for summary judgment, the defendants submitted: a transcript of the plaintiff's sworn testimony at a 50–h Examination; a police incident report; an inter-office memorandum from the officer in charge to the white Plains police chief; and a Use of Force Report. In comparing the materials prepared by the police officers with the plaintiff's sworn testimony, there are disputes of fact. It must always be remembered that, "at the summary judgment stage, the Court should disregard all evidence favorable to the moving party that the jury is not required to believe. To do otherwise would supplant the jury's constitutionally-mandated role." Robert S. Mantell, *Summary Judgment: The Real World, 31st Annual Labor & Employment Law Spring Conf.* 275, 276 (Mass. Bar Ass'n, Mar. 11, 2010) (citing *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

> [A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses."

*Reeves,* 530 U.S. at 151, 120 S.Ct. 2097 (emphasis supplied) (internal citations omitted). "Thus, the Court should disregard . . . evidence proffered by the movant that a jury *might* not credit. Such disposable evidence includes testimony and affidavits from interested witnesses produced by, or affiliated with the defendant. To rely at summary judgment on evidence that a jury need not believe would be to engage in improper fact-finding." Mantell at 276 (internal citations omitted). *See also generally* Suja A. Thomas, *Why Summary Judgment is Unconstitutional,* 93 Va. L.Rev. 139 (2007). Here, the jury will be free to disregard the testimony of the police witnesses and thus in ruling on this motion, the Court will rely solely on the

---

1. Of the District of Massachusetts, sitting by designation.

plaintiff's sworn testimony and uncontradicted facts from the defendants' evidence.

In the early hours of March 24, 2007, Williams was at a bar, the Porter House Saloon, in White Plains, According to Williams' testimony, around closing time, Williams' friends were involved in an altercation with two white men at the bar. Tr. 50–h Hearing 13–17, Sept. 12, 2007. Shortly after Williams and his friends exited the bar, the white men also exited. *Id.* at 17. Police officers ware already present outside the bar. *Id.* at 19. Unbeknownst to Williams, the police officers arrived at the bar in response to a report of a large group fighting. Aff. Supp. Summ. J. Ex. E.

As Williams exited the bar, another friend, Rosa Morales ("Morales"), exchanged words with the white men. Tr. 50–h Hearing 18, Sept. 12, 2007. The police officers told everyone exiting the bar to go home. *Id.* at 21. The altercation continued. *Id.* at 22–23. Although Williams had his back to the altercation, he understood that Morales struck one of the white men. *Id.* at 22. At that point, the police officers restrained Morales and pushed the two men to the side. *Id.* at 24. Morales' boyfriend, Onyebuchi Salomon ("Salomon"), became upset when he saw the police officers focusing on her rather than the two white men and became increasingly agitated. *Id.* at 25–27. The police officers again told everyone to go home before anything happened, indicating that things were already out of control. *Id.* at 27. Williams tried to restrain Salo-

mon and convince him to leave the area. *Id.* During that time, Williams had his back to the police officers. *Id.* at 28. An officer tasered Williams in the back, *id.* at 29, and he fell to the ground on his face, *id.* at 31. The police officer put his knee in Williams' back and pushed his head into the ground. *Id.* Williams then was subjected to a second electroshock resulting in a total inability to move.[2] *Id.* Next, he was handcuffed and taken to the police station, where he was informed that he was charged with disorderly conduct and resisting arrest. *Id.* at 33, 41.

As a result of the events, Williams suffered emotional distress and mental pain as well as scratches on his face, a sore back, and damaged clothing. *Id.* at 48, 53, 55. Williams' mother, who is a nurse, took care of his face, and bought a heating pad for his back. *Id.* at 53. Otherwise, Williams did not seek any medical or psychological treatment. *Id.*

Ultimately, the City of White Plains dropped the resisting arrest charge. *Id.* at 50. William "pled to a disorderly conduct charge." *Id.* He paid a $245 fine. *Id.*

## II. ANALYSIS

### A. Section 1983 Claim of Arrest Without Probable Cause and State Law Claim of False Arrest

 In their motion, the defendants argue that summary judgment should be granted with regard to the state and federal false arrest claims because there was probable cause for the arrest and the police officers are entitled to qualified immunity.[3] The Court will not discuss the issue

---

**2.** The Police Report and Use of Force Report corroborate the use of the taser after Williams was already on the ground. "[Williams] began flailing his arms and threatening Officers involved in assisting me in his arrest. In a second attempt to gain compliance I forcible [sic] redirected Mr. Williams to the ground and began to try and grab one of his arms at this time Sgt. Tiederann [sic] used his Taser to help us gain compliance." Aff. Supp.

Summ. J. Ex. E. Sgt. Tiedemann wrote in his Use of Force Report that "[Williams] was physically taken to the ground where his combativeness continued. . . . I directed all officer [sic] to release the subject. I immediately initiated the Advanced Taser in the Drive Stun mode, approximate 3 second burst, to the subjects [sic] buttocks." *Id.* Ex. G.

**3.** In supporting their arguments regarding probable cause and qualified immunity, the

of probable cause because it finds that the police officers are entitled to qualified immunity. Qualified immunity is designed to protect government officials from civil liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In cases alleging false arrest, an arresting officer is "entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991). To be awarded qualified immunity in a false arrest action, a defendant "need only show 'arguable' probable cause." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir.2000). Similarly, under New York state law, an officer can rebut a presumption of an unlawful warrantless arrest "if, applying the reasonable, prudent person test, the arresting officer, acting in good faith, had 'reasonable cause for believing the person to be arrested to have committed [a felony.]'" *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir.2007) (alteration in original) (quoting *Dillard v. City of Syracuse*, 51 A.D.2d 432, 435, 381 N.Y.S.2d 913 (N.Y.App.Div.1976)).

■ As described by Williams, his friends were engaged in an altercation and the officers told everyone to go home at least twice. Williams states that he merely was attempting to persuade and prevent a friend from engaging in further confrontation with the police. Then, he says, he was subjected to an electroshock in the back,

restrained, and arrested. While the Court disregarded the police version to the extent it differed with the one described by Williams, the events described by Williams are sufficient to grant qualified immunity. In the face of escalating tensions among potentially intoxicated individuals, it was reasonable for police officers to believe that Williams was engaged in the altercation and disturbing the peace. Therefore, the motion for summary judgment as to the state and federal falsa arrest claims is granted.

**B. Section 1983 Claim of Excessive Force and State Law Claim of Assault and Battery**

The defendants argue that no genuine issue of material fact exists with regard to the appropriateness of the amount of force applied to Williams during his arrest.

■ Use of excessive force in connection with arresting criminal suspects is prohibited by the Fourth Amendment. The courts use an objective reasonableness test to assess the issue. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The determination of whether the force employed was reasonable requires an inquiry into the relevant facts, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Hemphill v. Schott*, 141 F.3d 412, 417 (2d Cir.1998).

■ Because there is some dispute about the amount of force used, the Court relies solely on the description supplied by Williams in his sworn testimony to determine whether the use of force was objec-

---

defendants primarily apply the law to facts from a different case. *See* Mem. Supp. Summ. J. at 11, 13, 14, 16. Williams, howev-

er, never responded at all to the motion for summary judgment.

tively reasonable. Williams claims that he was electroshocked with a Taser gun twice. The second shock came after Williams was on the ground with an officer restraining him. The facts, construed most favorably to Williams, describe a constitutionally unreasonable use of force in restraining Williams. Therefore, the defendants' motion for summary judgment on the section 1983 claim of excessive force, and the state claims of assault and battery is denied.

## C. Claim of Malicious Prosecution

■ A malicious prosecution claim requires that a plaintiff show: "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir.2009) (citing *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir.2003)). Williams has not provided any evidence to allow his malicious prosecution claims to go forward.

■ In the complaint, Williams alleges that "the charge of resisting arrest, Penal Law 205.20[,] was dropped and the charge of Disorderly Conduct, Penal Law 240.20[,] was adjourned in contemplation of dismissal and subsequently dismissed." Compl. ¶ 53. The only evidence in the record related to the dismissal of the charges arises in Williams sworn testimony, where he states that the resisting arrest charge was dropped and that "he pled to a disorderly conduct charge" and paid a fine. Tr. 50–h Hearing 50, Sept. 12, 2007. Whether Williams' case concluded with a guilty plea to disorderly conduct, or with an adjournment in contemplation of dismissal, this is not a dispute requiring submission of this claim to the jury because, in either case, Williams is not able to show that the charge for disorderly conduct terminated

in his favor. *See Shain v. Ellison*, 273 F.3d 56, 68 (2d Cir.2001) (holding that "adjournment in contemplation of dismissal is not considered to be a favorable termination" for malicious prosecution purposes).

Moreover, Williams has not submitted any evidence to establish malice by the defendants in charging Williams with disorderly conduct and resisting arrest.

Since Williams cannot establish that the disorderly conduct charge terminated in his favor and has presented no evidence of malice, the defendants' summary judgment motion with regard to malicious prosecution is granted.

## D. Claims of Negligence

■ Williams brings three negligence claims. First, he alleges that the City of White Plains was negligent in hiring and retention, because it did not investigate the background of individuals to be employed as police officers, and that the City knew that these individuals were unfit for that type employment. Compl. ¶ 37. Second, Williams's complaint alleges that the City failed properly to train and supervise its employees, particularly with regard to the use of the Taser device, handling and controlling a crowd, and managing their temper. *Id.* ¶ 41. Third, Williams' complaint alleges that because the police officers arrested him without probable cause, and used excessive force against him, their actions amounted to performing their duties negligently. *Id.* at ¶ 45.

■ Williams has not submitted any evidence in support of his claims. In a summary judgment motion where the nonmovant bears the ultimate burden of proof, "the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14,

18 (2d Cir.1995). The nonmovant must then "come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely ... on the basis of conjecture or surmise." *Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186, 188 (2d Cir.1992). There is no evidence on the record to support the three counts of negligence. Therefore, on these three claims of negligence, summary judgment shall enter for the defendants.

### E. Claims Against the City of White Plains Police Department

The defendants argue that because White Plain Police Department is not a juridical entity, all claims against it ought be dismissed. Mem. Supp. Summ. J. at 21.

Indeed, White Plains Police Department is an administrative arm of City of White Plains; it does not have a legal identity separate and apart from the municipality and thus cannot sue or be sued. *See Fanelli v. Town of Harrison*, 46 F.Supp.2d 254, 257 (S.D.N.Y.1999) ("Under New York law, departments such as the Town of Harrison Police Department, which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.").

Therefore, all claims against the City of White Plains Police Department are dismissed.

### F. Section 1983 Claims Against the City of White Plains

■■■ A municipality can be subject to suit pursuant to Section 1983. *Monell v. Dep't of Social Servs. Of the City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It can be held liable when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality]'s officers." *Id.* In addition, municipalities may be sued when the action occurs "pursuant to governmental 'custom' even though such a custom has not received formal approval through the [municipality]'s official decision making channels". *Id.* It cannot, however, be held liable under section 1983 solely on a *respondeat superior* theory. *Id.* at 691, 98 S.Ct. 2018.

■■■ Williams fails to submit evidence demonstrating that any of the City of White Plains' ordinances, regulations, official decisions, customs or usages were a basis for the alleged violation of his constitutional rights. Thus, summary judgment is granted in favor of the City of White Plains for any action based on Section 1983.

The remaining state law claim of assault and battery against the City of White Plains is alive due to the potential for vicarious liability for actions of its police officers as its employees. *See L.B. v. Town of Chester*, 232 F.Supp.2d 227, 239 (S.D.N.Y.2002) ("Unlike cases brought under [Section] 1983, municipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of *respondeat superior*.")

### H. Local Rules Requirements

Williams counsel appears to have done next to nothing to advance his client's cause. He has not responded to discovery, Aff. Supp. Summ. J. Ex. G, nor has he submitted any papers in response to the defendants' motion for summary judgment, including a statement of material facts as required under Local Civil rule 56.1(b). Still, this Court takes seriously its obligation to draw all reasonable inferences in favor of the non-moving party, here Williams. Here, a careful review of the

382

entire evidentiary record reveals that Williams still does not know who participated in the decision to arrest him; nor does he know which officer or officers touched him. Accordingly, since Sgt. Tiedemann admits using his Taser and since he appears to have been the senior officer present, drawing all inferences in Williams' favor, the case, as limited herein, may proceed solely against him as the individual defendant.

## III. CONCLUSION

As against the City of White Plains Police Department the case is dismissed entirely. Summary judgment shall enter for the defendants on all claims based on negligence. Summary judgment shall enter for the defendants as to the claims of false arrest and malicious prosecution. As against the City of White Plains, the claims pursuant to section 1983 are dismissed. Summary judgment is denied as to Sgt. Tiedemann with regard to the section 1983 claim of use of excessive force and the state law claim of assault and battery, and the City of white Plains, which remains as a *respondeat superior* defendant should Sgt. Tiedemann be found liable for assault and battery. In all other respects, summary judgment shall enter for the defendants.

**SO ORDERED.**